UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF TENNESSEE
AT GREENEVILLE

| | |
|---|---|
| JONATHAN BREEZE, ) | |
|     Petitioner, ) | |
| ) | |
| v. ) | No. 2:03-CR-06 |
| ) | No. 2:11-CV-337 |
| UNITED STATES OF AMERICA, ) | |
|     Respondent. ) | |

**MEMORANDUM OPINION**

Petitioner Jonathan Breeze ("petitioner" or "Breeze") has filed a motion to vacate pursuant to 28 U.S.C. § 2255, [Doc. 117]. The government has responded in opposition, [Doc. 126], and petitioner has replied, [Doc. 128]. The Court heard oral argument on June 28, 2012. Petitioner has also filed an "Expedited Motion To Reduce Sentence Pursuant To 18 U.S.C. § 3582(c)," [Doc. 119], and the government has likewise responded in opposition, [Doc. 127]. For the reasons which follow, the motions, [Docs. 117, 119], will be DENIED.

**I. Background**

On January 28, 2003, the federal grand jury returned a one-count indictment against Breeze and Dwayne Norton charging them with conspiracy to distribute and possess with the intent to distribute 50 grams or more of cocaine base (crack) in violation of 21 U.S.C. §§ 846 841(a)(1), [Doc. 1]. On December 22, 2003, the United States filed an information pursuant to 21 U.S.C. § 851(a)(1) giving notice of the government's intent to seek enhanced punishment against Breeze because of two prior felony drug offenses, i.e., felony possession with intent to sell and deliver cocaine on January 13, 1999 (Case No. 98CRS029752, Alamance County Superior Court, Graham, North Carolina) and felony possession of cocaine on December 31, 2001 (Case No. 00CRS060030, Alamance County Superior

Court, Graham, North Carolina), [Doc. 34]. On February 9, 2004, Breeze entered a plea of guilty pursuant to a negotiated plea agreement, [Doc. 51]. In the plea agreement, Breeze stipulated to the two prior "felony" drug offenses, agreed that he was subject to a mandatory minimum term of life imprisonment, and agreed to waive his right "to file any post-conviction motions or pleadings pursuant to [28 U.S.C. §] 2255" except "upon grounds of ineffective assistance of counsel and prosecutorial misconduct not known to [petitioner] at the time of [his] guilty plea," [*Id.*, at 9-10].

A presentence investigation report was prepared. Using the 2003 version of the United States Sentencing Commission *Guidelines Manual*, the probation officer calculated a base offense level of 36 based on petitioner's stipulation that he was responsible for conspiring to distribute 39.5 ounces of crack (at least 500 grams but less than 1.5 kilograms). He was deemed a career offender pursuant to USSG § 4B1.1 and his base offense level was increased to 37.[1] After a three level reduction for acceptance of responsibility, his offense level and criminal history category of VI resulted in a guidelines range of 262-327 months imprisonment. Because he was subject to a mandatory minimum life sentence, however, the guidelines range was mandatory life imprisonment.

The government filed a motion for downward departure pursuant to 18 U.S.C. § 3553(e) based on petitioner's substantial assistance, [Doc. 82]. On June 30, 2005, the Court granted the motion for downward departure and sentenced Breeze to 180 months of imprisonment. Judgment was entered on June 30, 2005, [Doc. 94]. Petitioner appealed the sentence and the Sixth Circuit affirmed on June 5, 2007, [Doc. 108]. Petitioner did not seek a writ of certiorari from the Supreme Court and his conviction became final on September 3, 2007, the expiration of the time for seeking the writ. The instant motion to vacate was filed more than four years later on November 13, 2011.

---

[1] The career offender enhancement was applied because of the two prior 1999 and 2001 drug offenses, stipulated by Breeze to be felony offenses, and a 2001 conviction for felonious restraint.

## II. The Section 2255 Motion

Breeze's *pro se* motion raises two grounds for relief under § 2255: (1) relying on *United States v. Rodriquez*, 553 U.S. 377 (2008), *United States v. Pruitt*, 545 F.3d 416 (6th Cir. 2008), *Carachuri-Rosendo v. Holder*, --- U.S. ---, 130 S.Ct. 2577 (2010), *United States v. Haltiwanger*, 637 F.3d 881 (8th Cir. 2011), and *United States v. Simmons*, 649 F.3d 237 (4th Cir. 2011) (*en banc*), petitioner argues he is no longer subject to the mandatory life sentence or career offender enhancement under the Guidelines because his prior North Carolina offenses are not felonies which carry a maximum sentence of more than 12 months, and (2) petitioner argues he is eligible for resentencing under retroactive reduced guidelines ranges applicable to crack cocaine offenses.

The government responds in opposition to petitioner's motion, arguing that his claims are waived and, in any event, untimely. More specifically, the government relies on the explicit waiver of petitioner's right to file any pleading under § 2255 since his challenge here does not rest on any allegation of ineffective assistance of counsel or prosecutorial misconduct. Even if the right to file the instant motion is not waived, the government argues, it is untimely under the statute of limitations in the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), 28 U.S.C. § 2255(f).

Breeze replies, through counsel, that his motion is timely under § 2255(f)(4)[2] because "[t]he facts supporting Breeze's claim became discoverable for the purposes of challenging his conviction under § 2255 on the date that the Fourth Circuit decided *Simmons* favorably–August 17, 2011"; petitioner's actual innocence overcomes any finding of untimeliness; equitable tolling should apply if § 2255(f)(4) does not; the collateral review waiver in the plea agreement does not preclude the court from granting relief, because the waiver was not made voluntarily and, in any event, petitioner's claim falls outside the scope

---

[2] Breeze, in his original *pro se* motion, as discussed below, relied on § (f)(3).

of the waiver; and the court may refuse to honor the waiver if it would result in a miscarriage of justice.

**A. Standard of Review**

To seek relief under § 2255, a prisoner "must allege as a basis for relief: (1) an error of constitutional magnitude; (2) a sentence imposed outside the statutory limits; or (3) an error of fact or law that was so fundamental as to render the entire proceeding invalid." *Mallett v. United States*, 334 F.3d 491, 496-97 (6th Cir. 2003) (citation omitted). A petitioner can be granted § 2255 relief on the basis of a constitutional error which had a substantial and injurious effect or influence on the proceedings. *Reed v. Farley*, 512 U.S. 339, 353 (1994). However, a prisoner who is seeking to obtain collateral relief must clear a "significantly higher hurdle" than would exist on direct appeal. *Fair v. United States*, 157 F.3d 427, 430 (6th Cir. 1998).

Under Rule 8 of the Rules Governing Section 2255 Proceedings In The United States District Courts, a court is to determine, after a review of the answer and the records of the case, whether an evidentiary hearing is required. If the motion to vacate, the answer and the records of the case show conclusively a petitioner is not entitled to relief under § 2255, there is no need for an evidentiary hearing. *Baker v. United States*, 781 F.2d 85, 92 (6th Cir. 1986). In this case, petitioner does not suggest that an evidentiary hearing is necessary and all parties appear to agree that the issue is a legal, not a factual, one. The Court therefore finds that an evidentiary hearing is unnecessary and that it can decide this motion on the record.

**B. Waiver**

Breeze's plea agreement provides, in relevant part, that he "knowingly and voluntarily agrees to waive any rights he may have to file any post-conviction motions or pleadings pursuant to Title 28, United States Code, Section 2255," [Doc. 51 at 9]. The plea agreement limits the waiver in that it does not apply to petitioner's right to collaterally attack the conviction and sentence on grounds of ineffective

4

assistance of counsel or prosecutorial misconduct not known to him at the time of his guilty plea, [*Id*. at 9-10].

It is well recognized that a party may waive a provision intended for his benefit in a contract or statute. *Shutte v. Thompson*, 82 U.S. 151, 21 L.Ed. 123, 15 Wall. 151 (1872). Even fundamental constitutional rights may be waived by an accused, so long as the waiver is knowingly and voluntarily made. *Ricketts v. Adamson*, 483 U.S. 1, 10 (1987) (double jeopardy defense); *Boykin v. Alabama*, 395 U.S. 238, 243 (1969) (same, rights to jury trial and confrontation and privilege against self incrimination); *Johnson v. Zerbst*, 304 U.S. 458, 465 (1938) (right to counsel); *United States v. McGilvery*, 403 F.3d 361, 363 (6th Cir. 2005) (right to appeal); *Watson v. United States*, 165 F.3d 486, 489 (6th Cir. 1999) (right to collateral attack). It is well settled that a waiver of § 2255 claims is enforceable. *Davila v. United States*, 258 F.3d 448, 450 (6th Cir. 2001). Therefore, so long as Breeze understood the terms of the plea agreement and so long as it was made voluntarily and knowingly, the waiver is valid and enforceable.

### 1. Voluntarily and Knowingly Made?

Breeze makes only a perfunctory argument that he did not enter into the waiver knowingly and voluntarily. Indeed, a review of the transcript of the plea proceedings indicates why. Based on those proceedings, it is clear to the Court that Breeze understood the charges against him, that he understood that his sentence would be a mandatory life sentence, that he understood the plea agreement, including the waiver provision, that he understood the consequences of his guilty plea and that he entered his plea knowingly and voluntarily, [Doc. 102, chg. of plea hr'g Tr.). Indeed, the Court made a specific finding at the conclusion of those proceedings that petitioner's plea was knowingly and voluntarily made and he did not then, nor does he now, challenge that finding. Therefore, the waiver of § 2255 relief provision of the plea agreement is valid and enforceable and he has waived the right to raise all claims within the

scope of the waiver.

### 2. Within the Scope of the Waiver?

Breeze does argue that his claims fall outside the scope of the waiver, even if it is valid. The government, on the other hand, argues that the claims fall squarely within the waiver provision in that petitioner does not premise his claims on any allegation of ineffective assistance of counsel or prosecutorial misconduct not known to him at the time of the entry of his guilty plea. Although somewhat difficult to discern, it appears that the essence of Breeze's argument here is that his *Simmons* claim falls outside the scope of the waiver because Breeze "could not reasonably have foreseen this complete and utter change from precedent" and "could not have raised a credible challenge to his sentence prior to the Fourth Circuit's decision in *Simmons*." He further claims, relying on citations to Fourth Circuit cases, that claims "which affect constitutional rights and fundamental fairness" fall outside the scope of such waivers. *See United States v. Marin*, 961 F.2d 493, 496 (4th Cir. 1992) (waiver not valid as to review of a sentence imposed in excess of the maximum penalty provided by statute or based on a constitutionally impermissible factor such as race); *United States v. Attar*, 38 F.3d 727, 732 (4th Cir. 1994) (holding that a waiver of right to appeal did not preclude challenge to sentences on the grounds that proceedings following the entry of the guilty plea, including the sentencing hearing and presentation of motion to withdraw plea, were conducted in violation of Sixth Amendment right to counsel), *United States v. Broughton-Jones*, 71 F.3d 1143, 1147 (4th Cir. 1995) (defendant who waives his right to appeal does not waive his right to appellate review of a sentence imposed in excess of maximum penalty).

These Fourth Circuit cases cited by the petitioner are inapposite here. This case does not involve a question of whether Breeze was sentenced in excess of the permissible statutory maximum--he clearly was not--nor is there any suggestion that he was subjected to a sentence based on a constitutionally impermissible factor such as race. Thus, the only question before the Court is whether or not Breeze

makes a claim of ineffective assistance of counsel or prosecutorial misconduct not known to him at the time of the entry of his guilty plea. As the government argues, Breeze makes no claim of prosecutorial misconduct and he does not explicitly raise any claim of ineffective assistance of counsel. Indeed, he somewhat explicitly foregoes any claim of ineffective assistance of counsel related to the failure of appellate counsel to raise his *Simmons* issue, arguing that counsel could not have raised a credible challenge to the sentence prior to the Fourth Circuit's decision in *Simmons*.[3]

Petitioner's real claim here is that he simply could not have contemplated a change in the law and could not raise a credible challenge based on *Simmons*, which he argues somehow takes his claim outside the scope of his waiver. More accurately, he argues that application of the otherwise valid waiver would result in a miscarriage of justice, relying on *United States v. Teeter*, 257 F.3d 14, 25 (1st Cir. 2001) and *United States v. Khattak*, 273 F.3d 557, 562-63 (3d Cir. 2001), thus justifying the Court to refuse to apply the waiver. While petitioner's counsel has correctly stated the holdings of these cases, they are of little help to him here. In *Teeter*, the First Circuit noted that "because such waivers are made before any manifestation of sentencing error emerges, appellate courts must remain free to grant relief from them in **egregious** cases." 257 F.3d at 25 (emphasis added). Among the cases where the First Circuit opined that such flexibility should exist are cases "when the district court plainly errs in sentencing." *Id.* By way of example, the First Circuit states that it does not think that a waiver should be construed to bar an appeal if the trial court imposes a sentence exceeding the maximum penalty provided by law. Those circumstances do not exist here and the petitioner does not really argue otherwise.

In addition, the Sixth Circuit appears to have limited the a enforceability of a § 2255

---

[3] It is not ineffective assistance of counsel in the Sixth Circuit for counsel to fail to anticipate a change in binding Circuit precedent, thus requiring counsel to raise foreclosed issues in a meritless appeal. *See United States v. Burgess*, 142 Fed. App'x 232, 2005 WL 1515327 (6th Cir. (Ohio) June 22, 2005)

waiver only in those cases which raise challenges which go to the validity of the guilty plea itself, such as claims that a guilty plea or waiver was not knowing or voluntary, or a product of ineffective assistance of counsel. *See In re Acosta*, 480 F.3d 421, 422 n.2 (6th Cir. 2007). Even if the Sixth Circuit would embrace the *Teeter* and *Khattak* holdings, it is clear, when reviewing the factors identified by the First and Third Circuits that the error alleged in this case does not constitute "an unusual circumstance" amounting to a miscarriage of justice. *Khattak*, 273 F.3d at 562. Those factors include "the clarity of the error, its gravity, its character (*e.g.*, whether it concerns a fact issue, a sentencing issue, or a statutory maximum), the impact of the error on the defendant, the impact of correcting the error on the government, and the extent to which the defendant acquiesced in the result." *Id*. at 563 (citing *Teeter*, 257 F.3d at 25-26) (internal quotation marks omitted). Here, the error was anything but clear at the time, its gravity, while serious, is not overwhelming since defendant here received a 15 year sentence rather than the otherwise possible term of life imprisonment, the alleged error concerns a sentencing issue, but not one where the Court imposed a sentence above the statutory maximum, and the defendant clearly acquiesced in the result. There simply is no manifest injustice here which would justify invalidation of the waiver.[4]

### 3. Mutual Mistake

Breeze also argues that the contractual doctrine of mutual mistake voids the plea agreement in this case and renders his waiver of his right to pursue collateral relief unenforceable. More specifically, he argues that both parties entered into the plea agreement with the mutual understanding that petitioner had been convicted of drug offenses which provided for enhanced penalties under 21

---

[4] The Sixth Circuit has recognized that it might not be appropriate to enforce a defendant's waiver of his right to appeal where a sentence is based on racial discrimination or exceeds the statutory maximum. *See United States v. Caruthers*, 458 F.3d 459, 471 (6th Cir. 2006). As late as 2011, the Sixth Circuit was invited to broaden its exception to include cases where the sentence amounts to a miscarriage of justice. Finding that the case did not present the question of whether to adopt that approach appropriately, the court declined the invitation. *See United States v. Bafna*, 424 Fed. App'x 528, 2011 WL 2039660 (6th Cir. (Ohio)).

8

U.S.C. § 841(b)(1)(A) for having two prior felony drug convictions when in fact that was not the case.

A contract based on a mutual mistake is "voidable by the adversely affected party unless he bears the risk of the mistake." *Restatement (Second) of Contracts* § 152 (2011). A mutual mistake is one made by both parties at the time of the contract "as to a basic assumption on which the contract was made [which] has a material effect on the agreed exchange of performances." *Id.* The mistake must be one which results in an imbalance that is "so severe that [the party seeking discharge] cannot fairly be required to carry it out." *Id.* cmt. c.

The Sixth Circuit has acknowledged the possibility of reformation of a Rule 11 plea agreement upon a showing of mistake, but only in limited circumstances:

> Reformation of a written agreement is warranted only when the evidence demonstrates that the parties' mutual mistake resulted in a written document which does not accurately reflect the terms of their agreement. Consequently, reformation is generally, without more, not an available remedy where the evidence demonstrates mistake or change of mind of only one of the contracting parties.

*United States v. Peveler*, 359 F.3d 369, 375 (6th Cir. 2004) (quoting *United States v. Weaver*, 905 F.2d 1466 (11th Cir. 1990)). *See also United States v. El Amin.*, 200 Fed. App'x 75, 2006 WL 2971312 (3d Cir. Oct. 18, 2006) (citing § 153 of *Restatement (Second) of Contracts* (1981) that reformation of a plea agreement is appropriate only where the mistake "fails to express the agreement.").

Here, Breeze fails to show that there was a mistake regarding the basic assumption on which the plea agreement was made or that the plea agreement does not accurately reflect the actual agreement of the parties. The basic assumption of the plea agreement is that Breeze would plead guilty to the conspiracy count in return for certain benefits he might receive from the government, including the ability to cooperate and achieve an ultimate reduction in sentence. He does not attempt to explain how the distinction between a prior misdemeanor and a prior felony is a crucial component of his

bargain. *See United States v. Frownfelter*, 626 F.3d 549 (10th Cir. 2010). Indeed, Breeze does not claim that the plea agreement does not accurately reflect the terms of the parties' agreement. In fact, it does. This is certainly not a situation where the parties incorrectly recorded their agreement. *See United States v. Rothberg*, 2001 WL 1654758 (N.D. Ill. December 20, 2001).

As noted above, reformation of a written agreement is warranted when the evidence demonstrates that the parties' mutual mistake resulted in a written document which does not accurately reflect the terms of their agreement. At most, Breeze has shown only that both he and the government were under a misapprehension as to what his potential sentence in the case might be. These kinds of misunderstandings about the appropriate sentence do not go to the basic assumption of the plea agreement. *See, e.g., United States v. White*, 597 F.3d 863 (7th Cir. 2010) (mutual mistake about safety valve eligibility does not render plea agreement voidable); *United States v. Castillo*, 303 Fed. App'x 989, 2008 WL 5395988 (2d Cir. Dec. 29, 2008) (mutual misunderstanding as to applicable guidelines range did not render plea agreement voidable); *United States v. Cieslowski*, 410 F.3d 353 (7th Cir. 2005) (mistake that *Booker* was about to change landscape of federal sentencing does not make agreement voidable).

**C. Timeliness**

Prior to the enactment of the AEDPA, the only time constraint for a federal prisoner to file a § 2255 motion was the prejudice which would ensue if the respondent were required to respond to the motion to vacate due to a delay in filing. *See* Advisory Committee Note to 1976 amendment to Rule 9, Rules Governing Section 2255 Proceedings. As a result of the AEDPA, however, a federal prisoner now has one year in which to file a § 2255 motion. *See* 28 U.S.C. § 2255(f). The limitation period runs from one of several events. The statute provides as follows:

(f) A 1-year period of limitation shall apply to a motion under

> this section. The limitation period shall run from the latest of–
>
> (1) the date on which the judgment of conviction becomes final;
>
> (2) the date on which the impediment to making a motion created by governmental action in violation of the Constitution or laws of the United States is removed, if the movant was prevented from making a motion by such governmental action;
>
> (3) the date on which the right asserted was initially recognized by the Supreme Court, if that right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or
>
> (4) the date on which the facts supporting the claim or claims presented could have been discovered through the exercise of due diligence.

28 U.S.C. § 2255(f)(1)-- (4).

Clearly, petitioner's motion is untimely under section (f)(1) and section (f)(2) has no arguable application. Therefore, petitioner's motion is untimely unless he filed his motion within one year of events described in sections (f)(3) and/or (f)(4). As noted above, petitioner invokes the provisions of § (f)(3) in his *pro se* motion; however, counsel, in her reply memorandum, appears to abandon the argument under § (f)(3), apparently because she realizes that it does not help petitioner, and instead relies on § (f)(4). Even if petitioner did not waive his right to file the instant § 2255 motion, the Court concludes that his petition is untimely under any of the sections of § 2255(f) and must also be denied for that reason.

### 1. Section (f)(3)

Because counsel appears to abandon the argument that petitioner's motion is timely under § (f)(3), the Court will only briefly discuss that argument. Under § (f)(3), a petition is timely so long as it is filed within one year after the Supreme Court issues an opinion newly recognizing a right and

holding that it applies retroactively to cases on collateral review. Petitioner, in his *pro se* filing, argues that his claim rests on a "new rule of law that may require an individualized analysis of [his prior convictions] for enhancement purposes," and thus suggests that his petition is timely under § 2255(f)(3), [Doc. 117 at 4]. As the government notes, petitioner finds his "new rule" in *United States v. Rodriquez*, 553 U.S. 377 (2008) and cases which follow, including *United States v. Pruitt*, 545 F.3d 416 (6th Cir. 2008), *Carachuri-Rosendo v. Holder*, 130 S.Ct. 2577 (2010), and *United States v. Simmons*, 649 F.3d 237 (4th Cir. 2011) (*en banc*).

First of all, any reliance by Breeze on *Pruitt* or *Simmons* as decisions which would began the running of a new limitations period is misplaced based upon the clear language of the statute. *Simmons* is a decision of the Fourth Circuit; *Pruitt* is a Sixth Circuit decision. By the clear terms of the statute, any limitations period triggered by § (f)(3) begins on "the date on which the right asserted was initially recognized by the Supreme Court." Thus, it is only the Supreme Court decisions in *Rodriquez* or *Carachuri-Rosendo* which would potentially cause the limitations period of § (f)(3) to begin to run. *Rodriquez* was decided in 2008 and *Carachuri-Rosendo* was decided on June 14, 2010. Even if the rule in either of those cases was determined to be a "new rule" which was "retroactively applicable," this petition, filed on November 3, 2011, is untimely.[5]

**2. Section (f)(4)**

Section 2255(f)(4) provides for the statute of limitations to begin from "the date on which the facts supporting the claims presented could have been discovered through the exercise of due diligence." Counsel argues that "[t]he facts supporting Mr. Breeze's claim became discoverable for the purposes of challenging his conviction under § 2255 on the date that the Fourth Circuit decided *Simmons*

---

[5] The Court notes that the Fourth Circuit recently held that *Carachuri-Rosendo* is a procedural rule that does not apply retroactively to cases on collateral review. *United States v. Powell*, 691 F.3d 554 (2012). *See also Love v. United States*, No. 2:03-CR-62, slip op at 5-6 (E.D. Tenn. March 14, 2012).

12

favorably–August 17, 2011," [Doc. 128 at 5]. Breeze argues that the reference to "facts" in § 2255(f)(4) has meaning beyond the simple dictionary definition and includes "court cases," relying on *Johnson v. United States*, 544 U.S. 295 (2005). In *Johnson*, the Supreme Court held that notice to a federal prisoner of an order vacating his prior state conviction that was used to enhance the prisoner's federal sentence was a matter of fact under § 2254(f)(4) which could start a renewed one-year limitation period under § 2255(f)(4), provided that the prisoner had shown due diligence in seeking the order of vacatur. *Id.* at 302. Breeze, without explanation, argues that any challenge by him made prior to the decision in *Simmons* "would have been summarily rejected" and that Breeze "could not have challenged his conviction until the Fourth Circuit decided *Simmons*."

Even accepting petitioner's argument that a decision by a circuit court of appeals favorable to his position constitutes undiscovered "facts" within the meaning of § (f)(4), he makes no attempt to explain why the Supreme Court's decision in *Rodriquez* or *Carachuri-Rosendo,* or the Sixth Circuit's decision in *Pruitt*, would not have placed him on notice that he should file his § 2255 motion. Breeze's argument that he could not have prevailed on his claim until the Fourth Circuit decided *Simmons* and that his § 2255 claim would have been summarily rejected,[6] might have some force had Breeze been convicted in a district court located within the Fourth Circuit. He was not.

---

[6] In support of his claim that his § 2255 motion would have been summarily rejected, Breeze relies on a series of district court cases from the Eastern District of North Carolina. *See* Doc. 128 at 7-8. Those cases have no relevance in this district court, located in the Sixth Circuit. To the extent that he is correct in his premise, his argument would more appropriately be that he could not have challenged his conviction until the Sixth Circuit decided *Pruitt* on October 21, 2008.
In *Pruitt*, the court dealt with a factual situation almost identical to that of Breeze. The Sixth Circuit applied the Supreme Court's *Rodriquez* holding to the North Carolina sentencing scheme and held "that it is necessary to consider the defendant's particular prior record level–and not merely the worst prior record level-in determining whether a conviction was for an offense 'punishable' by a term exceeding one year . . ." *Pruitt*, 545 F.3d at 424. In deciding *Pruitt*, the Sixth Circuit noted that its decision was "in some tension with holdings of the Fourth Circuit" which were decided prior to *Rodriquez* but nevertheless vacated and remanded for resentencing. There is little doubt in this Court's mind that the Sixth Circuit's decision in *Pruitt* would have alerted a person such as petitioner, convicted and sentenced in a district court in the Sixth Circuit, that he could not continue to sit on his rights but rather should have filed his § 2255 motion within one year of the discovery of facts which supported his claim. As noted above, *Pruitt* was decided on October 21, 2008; yet, Breeze did not file his motion until more than three years after the Sixth Circuit's decision.

### 3. Equitable Tolling

Breeze requests that the Court invoke the principle of equitable tolling to grant him relief if the Court does not find that his petition is timely under any of the provisions of § 2255(f). The one-year statute of limitations for filing a § 2255 petition is subject to equitable tolling. *See Hall v. Warden, Lebanon Corr. Inst.*, 662 F.3d 745, 749-50 (6th Cir. 2011) (citing *Holland v. Florida*, -- U.S. --, 130 S.Ct. 2549, 2560, 177 L.Ed.2d 130 (2010)). Petitioner bears the burden of demonstrating he is entitled to equitable tolling. *See McClendon v. Sherman*, 329 F.3d 490, 494 (6th Cir. 2003). The burden on the petitioner is a heavy one because, "[a]bsent compelling equitable considerations, a court should not extend limitations by even a single day." *Jurado v. Burt*, 337 F.3d 638, 642 (6th Cir. 2003).

Equitable tolling allows a court to toll a statute of limitations when "a litigant's failure to meet a legally–mandated deadline unavoidably arose from circumstances beyond that litigant's control." *Robertson v. Simpson*, 624 F.3d 781, 783 (6th Cir. 2010) (internal quotation marks omitted). Until recently, a five–factor inquiry was used in the Sixth Circuit to determine whether a habeas petitioner was entitled to equitable tolling. *See Dunlap v. United States*, 250 F.3d 1001, 1008 (6th Cir. 2001) (identifying the following factors as relevant to the equitable tolling determination: (1) the petitioner's lack of notice of the filing requirement; (2) the petitioner's lack of constructive knowledge of the filing requirement; (3) diligence in pursuing one's rights; (4) absence of prejudice to the respondent; and (5) the petitioner's reasonableness in remaining ignorant of the legal requirement for filing his claim). That inquiry has now been replaced with a two–part test which requires the petitioner to show "(1) that he has been pursuing his right diligently, and (2) that some extraordinary circumstance stood in his way and prevented timely filing." *Holland v. Florida*, 130 S.Ct. 2549, 2562 (2010) (quoting *Pace v. DeGuglielmo*, 544 U.S. 408, 418 (2005)).

Breeze makes many of the same arguments here that he has made with respect to other

issues raised by his petition. He argues that the result to him is "unconscionable" simply because he "failed to abide by a statutorily-prescribed, non-jurisdictional, time limit, when had he done so his claims would have been fruitless anyway." Breeze also cites the case of another petitioner before this Court, Garland Slade, where the government conceded, under the unique circumstances of that case, that the petitioner should be resentenced given the *Simmons* decision. Breeze also argues that he is "actually innocent of the enhanced crime of which he was convicted," and that "the same government who now objects to the timeliness of the § 2255 petition is the same government who claims to have supported the Fair Sentencing Act." The government, on the other hand, argues that petitioner has not made the required showing under the two part test of *Holland*.

On this record, the Court is constrained to agree with the government. Breeze has not shown that he has exercised "reasonable diligence," *Holland*, 130 S.Ct. at 2565, in protecting his rights nor has he shown that some extraordinary circumstance prevented the timely filing of his § 2255 motion. As noted above, petitioner relies on cases decided well before *Simmons*, including *Rodriquez*, *Pruitt*, and *Carachuri-Rosendo*. Petitioner could have filed his challenge to his career offender classification and the mandatory minimum life term of imprisonment relying on any of those decisions. That he failed to recognize the applicability of the rule announced in *Rodriquez* and applied in *Pruitt* and *Carachuri-Rosendo* until the Fourth Circuit applied it in *Simmons* is not a sufficient excuse for failure to timely file his § 2255 motion and does not reflect reasonable diligence on his part in protecting his rights. See *Bousley v. United States*, 523 U.S. 614, 623 (1998) (rejecting, as an excuse for petitioner's failure to timely assert an argument based on a newly announced Supreme Court rule, the claim that the argument would have been unacceptable to the lower courts at the time it would have been presented).[7] Breeze's

---

[7] The procedural history in the *Pruitt* case illustrates very well that Breeze could have raised his sentencing challenge in the Sixth Circuit long before the Fourth Circuit decided *Simmons*. That is exactly what happened in the *Pruitt* case where the Sixth Circuit applied the rule announced in *Rodriquez* and adopted the same position ultimately adopted by

15

argument that he lacked a credible § 2255 claim prior to the Fourth Circuit's decision in *Simmons* simply does not provide the kind of extraordinary circumstances which he must show in order to qualify for equitable tolling.

### 4. Actual Innocence

Breeze next argues that his "[a]ctual innocence lifts the procedural bar caused by a failure to timely file." He more specifically argues that he was sentenced under enhanced statutory penalties pursuant to 21 U.S.C. § 841(b)(1)(A) based on the erroneous conclusion that he had two prior felony drug convictions, convictions which the Sixth Circuit in *Pruitt* and the Fourth Circuit in *Simmons* have now recognized are not in fact felony convictions. As a result he argues that he "is innocent of greater offense for the enhanced statutory penalties provided under 21 U.S.C. § 841(a)(1)(A) and the career offender guideline provision."

In extraordinary cases, a petitioner may raise a claim of actual innocence "to avoid a procedural bar to the consideration of the merits of his constitutional claims." *Schlup v. Delo*, 513 U.S. 298, 327 (1995). To establish actual innocence the petitioner must show that it is more likely than not that no reasonable juror would have found petitioner guilty beyond a reasonable doubt. *Id.* "Actual innocence means factual innocence, not mere legal insufficiency." *Bousley*, 523 U.S. at 623.

In the capital-sentencing context, the Supreme Court has recognized "a narrow exception" by allowing the application of the actual-innocence exception where constitutional errors result in a death sentence for one who is actually innocent of the aggravating circumstances that render him eligible for the death penalty. *Dretke v. Haley*, 541 U.S. 386, 388 (2004) (citing *Sawyer v. Whitley*, 505 U.S. 333 (1992)). Neither the Supreme Court nor the Sixth Circuit have extended the actual innocence exception to include constitutional sentencing errors in noncapital cases. *Id.* at 393-94; *Gibbs v. United States*, 655

---

the Fourth Circuit in *Simmons*.

16

F.3d 473, 477-78 (6th Cir. 2011) (citing *Flahardy v. United States*, 1995 WL 570925, at *2 (6th Cir. Sept. 27, 1995) and *Black v. United States*, 61 F.3d 903, 1995 WL 445718, at *2 (6th Cir. July 26, 1995) table)). *See also Lee v. Brunsman*, 474 Fed. App'x 439 (6th Cir. 2012).

Notably, Breeze does not argue that he is factually innocent of the offense for which he pled guilty, that is, conspiracy to distribute and to possess with the intent to distribute 50 grams or more of methamphetamine. He argues rather that he should have received a lesser sentence because he was incorrectly categorized as a career offender and subjected to a mandatory life term of imprisonment based upon the erroneous conclusion that he had in fact sustained two prior felony drug offenses. The actual innocence exception does not apply in cases where a defendant simply alleges that he should have received a lesser sentence and does not claim that he is actually innocent of the offense. *See Black*, 1995 WL 445718, at *2. Breeze has not established that an actual-innocence exception to the AEDPA is applicable under the circumstances present in this case.

### III. Section 3582(c) Motion

As noted above, Breeze has also filed a motion for sentence reduction pursuant to 18 U.S.C. § 3582(c) based on Amendment 750 to the United States Sentencing Guidelines, [Doc. 119]. He seeks consideration of that motion "after consideration of the pending *pro se* § 2255 motion to vacate the original sentence and resentence him to a non-career offender incarceration term" and he acknowledges in his motion, filed by counsel, "that he must first receive § 2255 relief by vacating his sentence, as otherwise he would be ineligible for a § 3582(c) reduction." The government, quite predictably, has responded in opposition to the motion, arguing that Breeze is ineligible for a sentence reduction under § 3582(c) because his initial guidelines range was based on his classification as a career offender, not any drug quantity, and his effective guidelines range was set by a statutorily-mandated life sentence. *See United States v. Payton*, 617 F.3d 911, 914 (6th Cir. 2010).

17

As Breeze concedes in his motion, Amendment 750 will lower the applicable guidelines range only in the event the mandatory minimum penalty and career offender status is set aside pursuant to 28 U.S.C. § 2255. Given the denial of Breeze's separately filed § 2255 motion, his motion for reduction of sentence under § 3582(c) must also be denied.

## IV. Conclusion

For the reasons set forth herein, the Court finds that Breeze's motion to vacate pursuant to 28 U.S.C. § 2255, [Doc. 117], is without merit and is DENIED. Likewise, his motion for reduction of sentence pursuant to 18 U.S.C. § 3582(c), [Doc. 119], is DENIED.

Under 28 U.S.C. § 2253(c)(2), the Court must determine whether a certificate of appealability should be granted with respect to Breeze's § 2255 motion. A certificate should issue if petitioner has demonstrated a "substantial showing of a denial of a constitutional right." 28 U.S.C. § 2253(c)(2). The Sixth Circuit Court of Appeals disapproves of the issuance of blanket denials of a certificate of appealability. *Murphy v. Ohio*, 263 F. 3d 466 (6th Cir. 2001). The District Court must "engage in a reasoned assessment of each claim" to determine whether a certificate is warranted. *Id*. at 467. Each issue must be considered under the standard set forth by the Supreme Court in *Slack v. McDaniel*, 529 U.S. 473, 120 S. Ct. 1595 (2000). *Id.*

Under *Slack*, to warrant a grant of the certificate, "[t]he petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." Having examined each of the petitioner's claims under the *Slack* standard, the Court finds that reasonable jurists could not find that this Court's dismissal of petitioner's claims was debatable or wrong. Therefore, the Court will deny petitioner a certificate of appealability.

A separate order will enter.

ENTER:

s/J. RONNIE GREER
UNITED STATES DISTRICT JUDGE